## VANKIRK *v.* THE PENNSYLVANIA RAILROAD CO.

An affidavit for the removal of a cause in which a corporation is a party, may be made by the agent or employee of the corporation.

Plaintiff bought a ticket over defendant's road, rode part of the distance, stopped over without permission, and tendered the same ticket for the remainder of the distance. The conductor took up the ticket, refused to return it, demanded fare, and, upon refusal to pay until the ticket was returned, ejected the plaintiff. *Held* that the defendants were not entitled to the ticket and the fare too. and that the ejectment of the plaintiff was unlawful.

**Error to the common pleas of Snyder county.**

Opinion delivered May 11, 1874, by

MERCUR, J. It is true the act of assembly providing for the removal of a cause, in which a corporation is a party, from the county in which it is brought to another, declares that the affidavit shall be made by the party. To give this a literal construction would defeat the manifest intent and spirit of the law. A corporation must necessarily act through its officers, agents, and attorneys. The force of this fact is felt by the plaintiff. He admits that the affidavit may be made by an officer of the corporation, but denies that it can by an agent or employee. The reason for this distinction is not very clear. It cannot be because the existence of the necessary facts may not be as well known to an agent as to an officer. In fact, an employee engaged upon the line of the road may know the sentiment of the people toward it better than an officer, whose time is occupied in the office, or who occasionally passes over the road. This affidavit was made by the superintendent of that division of the road where the controversy arose. It is not alleged that he made it without authority from the company, nor that his action therein has ever been repudiated by the defendant. The objection, then, must rest upon the ground of the legal inability of the defendant to authorize an agent or employee to make such an affidavit. In Academy of Fine Arts *v.* Power, 2 Harris 442, Chief Justice Gibson well asked, "why should not the affidavit be as well made by a special deputy as by a president, secretary, or treasurer?" In that case the affidavit in behalf of the corporation was made by an agent to purchase a writ of error. It was held that the affidavit was well made by an agent though he was not expressly deputed for that purpose. We see no error in the first assignment.

The 3d, 4th, 6th, and 7th assignments will be considered together. By the uncontradicted testimony it appears the plaintiff had purchased a

ticket from Northumberland to Williamsport.  He had ridden upon it as far as Milton, being less than one-third of the distance.  Several days thereafter he endeavored to ride upon it from Milton to Williamsport. The conductor refused to permit him to so ride, took up the ticket against the plaintiff's will; and put him off the train.

The court rejected the evidence offered by the plaintiff to prove that before he was put out of the cars he offered to pay his fare, if the conductor would return his ticket ; that the conductor refused to r turn it, but insisted upon retaining it and also upon the plaintiff's paying his fare ; to be followed by evidence that in claiming to ride upon the ticket he was acting in good faith, upon information given to him by the ticket agent of whom he had previously purchased the ticket.

It appears the plaintiff voluntarily left the train at Milton, without having communicated his intention to the conductor in charge, and without making any arrangement for a subsequent continuation of the trip.  It is claimed that this was an abandonment of his right to demand a passage upon that ticket over the untravelled portion of his journey.  This view is sustained under the general rules of the company, by the authority of Dietrich *v.* Pennsylvania R. R. Co., 21 P. F. Smith, 442, and kindred cases.  His legal right had terminated.  If he thereafter procured a ride upon it, it would be through favor only of the company.  Waiving the question, then whether the plaintiff, under the general instructions given to the conductor, had a right to ride upon the ticket, it does not follow that the conductor had any right to take it from him  The conductor assumed the ticket to be of no value to the plaintiff and persisted in retaining it.  His determined persistency in retaining it was a most expressive declaration of its value to the defendant.  The plaintiff believed it to be of value to him.  The ticket agent had informed him that he was entitled to ride upon it.  Thus the employees of the company differed.  The plaintiff desired to test the question by legal proceedings  This ticket was to him important.  It was evidence of value paid.  It was evidence of a claim which he desired to establish by law.  By denying the plaintiff's right to ride upon it, the conductor waived all right to take or retain it. The defendant had no more claim to this ticket than to any one of a half dozen other tickets, either cancelled or uncancelled, which the plaintiff may have had in his pocket.  By leaving the train at Milton the plaintiff lost no other right than of riding upon the ticket thereafter.  He did not forfeit the right to retain the ticket, which, according to the rules of the company, had been left in his hands.  Many stations intervened between Milton and Williamsport.  Before leaving the former place the defendant would not have been justified in taking up the ticket without giving the plaintiff a check or some evidence that he had paid his fare.  State *v.* Thompson, 20 N. H. 250.  The right to take up this ticket must not be confounded with a case where a person has actually ridden on the ticket the whole distance for which it calls, nor where he has obtained it in fraud of the company.  In either of these cases it may be taken up.  In the

former the rules of the company and the implied contract in its purchase require it. In the latter the holder had no right to its possession. In this case the conductor, under his general orders, may not have been authorized to permit the plaintiff to ride on this ticket. There was however, nothing in equity or good morals to prevent the defendant from permitting it to be done. There was no impropriety in the plaintiff's retaining the ticket.

The conductor having ignored the plaintiff's right to ride upon it, the most he was justified in doing was to require a payment of the fare. This the plaintiff proposed to show he offered to do, but the conductor required more. He required not only payment for the ride the plaintiff was then taking, but also the yielding up of a ticket on which he was not riding. The conductor had no such right. To concede to him the right to demand of a passenger anything additional to the accustomed fare, would be fraught with the most mischievous consequences. While a railroad company should be protected in the enforcement of all its reasonable rules, yet fully equal care must be taken to protect the rights of passengers from any encroachment. The plaintiff was entitled to ride upon the payment of his fare only. It was in clear violation of law to require more of him. He was justified in requiring the return of the ticket improperly withheld from him. The defendants being in fault themselves cannot enforce the right against the plaintiff, which they seek to invoke    1 Redfield on Rail ways 105, pl. 13; Jennings v. Great Western Railway Co. 12 Jur. N. S. 331.

The declarations of the ticket agent, made several days after his sale of the ticket, were not admissible to establish a contract between the parties; but we think they were admissible as evidence of the good faith of the plaintiff in his claim to ride upon it, and of his belief in its uncancelled condition. These facts, together with the additional one that the plaintiff was permitted to ride past several stations, are proper to be considered by the jury in determining whether he had just reason to suppose the conductor would permit him to ride through on the ticket, and was thereby induced to decline paying his fare until a late moment.

The fifth assignment is not very important. . Inasmuch, however, as the witness had testified in regard to the ticket being punched, we think it was clearly pertinent to ask him "whether he knew what punching meant?" This may have been understood to ask whether he knew what act constituted punching, or what was its purpose.

We think the evidence covered by the eighth assignment bears upon the question of damages. The conductor having suffered the plaintiff to ride past several stations before ejecting him, and then having put him out, remote from any shelter, and in a severe storm, may be considered by the jury in deciding whether the conductor intentionally selected this inhospitable spot, or whether it happened to be the locality of the plaintiff's persistent refusal to pay. The learned judge, therefore, erred in taking the case from the jury, and the judgment must be reversed.

Judgment reversed and venire facias de novo awarded.